J-A17013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE CWIENK | : | |
| | : | |
| Appellant | : | No. 1719 EDA 2018 |

Appeal from the Judgment of Sentence June 4, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0009136-2016

BEFORE:  PANELLA, P.J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:                    **FILED NOVEMBER 19, 2019**

George Cwienk, III, appeals from the judgment of sentence imposed on June 4, 2018, in the Court of Common Pleas of Montgomery County, after he was convicted of Stalking, 18 Pa.C.S.A. § 2709.1(a)(2), and the summary offense of Harassment, 18 Pa.C.S.A. § 2709(a)(3).  After a three-day trial, the jury found Cwienk guilty of the Stalking charge, and the trial judge found him guilty of the summary charge.  Cwienk received a sentence of three to 23 months' incarceration, work release eligible, with a consecutive sentence of three years' probation.

In this timely appeal, he claims there was insufficient evidence to convict him of Stalking. In his next two issues, he contends that the trial court erroneously admitted (1) evidence of call logs and screen shots from his phone and (2) evidence of a pattern of his prior bad acts, typically referred to as Rule

404(b) evidence. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm on the issue of sufficiency of evidence. The second two issues have not been properly preserved for appellate review, and they are therefore waived.

The disturbing underlying facts of this matter, as developed at trial, are taken from the trial court's November 15, 2018, Pa.R.A.P. 1925(a) opinion.

> In August 2016, April Cwienk, Defendant's wife who is the victim in this case separated from Defendant and filed for divorce. Defendant, to whom Ms. Cwienk had been married for 18 years, had been jealous and controlling of her throughout the entire course of their relationship; alienating her from her family and restricting any attempts she made to see her friends. Defendant's conduct grew increasing[ly] controlling and alarming in June 2016, when he began suspecting her of having an affair. Despite requiring his wife to call him several times from morning to night throughout the day to keep him abreast of her whereabouts during this period, he often interrogated her in their garage in the evenings about her comings and goings. In the terrifying episode which ultimately prompted Ms. Cwienk to flee the marital home located in Montgomery County, Pennsylvania, Defendant met her at a bank parking lot, accused her of using an old cell phone found while rummaging through her belongings earlier that day while she was at work, to surreptitiously communicate with her "boyfriends," as he would refer to them. Defendant ignored his wife's explanation that the cell phone in question was that of her 90 year-old grandmother for whom she had helped set up the phone, and irately demanded his wife turn over her cell phone to him for inspection. As Defendant became increasingly angry, Ms. Cwienk opted to flee the bank parking lot for her home. Once home, Defendant continued his rampage, menacingly wielding a boulder from the couples' driveway while threatening to smash her car window if she refused to hand over her cell phone. It was at that point that Ms. Cwienk left the martial residence, and ultimately spent the week in a hotel.

Ms. Cwienk's absence, however, was short-lived as she returned out of fear for her safety and concern that, consistent with Defendant's relentless and terrifying threats during her absence, she would lose her family. Upon her return, she learned that Defendant had burned her clothes and her yearbook. Defendant even went so far as to compel her to take a lie detector test to substantiate her assertion that she had never cheated on him. Ms. Cwienk testified that upon her return, Defendant's conduct was even more controlling, and now, in addition, he seemed psychologically unstable and paranoid.

The last occasion in which Ms. Cwienk spoke to Defendant occurred on or about August 22, 2016, when she made the decision to leave the marital home permanently. Then, during the period between September 21st and October 10th 2016, Defendant engaged in a course [of] conduct which precipitated the underlying charges. More specifically, he stalked Ms. Cwienk by sending her harassing text messages and letters, calling her (cell phone) at all hours of the night, leaving strange and unnerving voicemail messages, and hacking into several of her personal accounts. Terrified and exhausted by the breadth of Defendant's relentless assault spanning multiple mediums, rendering her vulnerable at all times of day and night, Ms. Cwienk described this period as a "nightmare," in which she lost hope that Defendant's assault would ever stop.

Ms. Cwienk first reported Defendant's behavior to the Upper Merion Police Department on September 25, 2016, when she went to the station and filed a police report. Upon receipt of Ms. Cwienk's report, Detective Constance Marinello ("Det. Marinello") began an investigation. During the course of her investigation, and after Ms. Cwienk's initial police report, Ms. Cwienk returned to the police station approximately one week later, not only feeling helpless and exasperated by Defendant's relentless course of conduct, but afraid for her life.

Trial Court Opinion, 11/15/18, at 1-3.

- 3 -

Cwienk first argues the evidence was insufficient to support his conviction for stalking. When considering a challenge to the sufficiency of the evidence, "we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner and determine whether the jury could find every element of the crime beyond a reasonable doubt." *Commonwealth v. Romero*, 722 A.2d 1014, 1020 (Pa. 1999). Any question of doubt is for the factfinder, unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Ketterer*, 725 A.2d 801, 804 (Pa.Super. 1999). Additionally, this Court has observed that:

> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

*Commonwealth v. Foreman*, 797 A.2d 1005, 1011 (Pa.Super. 2002), *quoting* *Commonwealth v. Dellavecchia,* 725 A.2d 186, 188 (Pa.Super. 1998).

Cwienk claims that his stalking conviction cannot stand because there was no proof that he was the one who actually texted and sent the distressing materials to the victim. We find this assertion utterly baseless because, as the trial court observed, Cwienk was the only person who had possession of these

materials. *See* N.T., Jury Trial, 2/28/18, at 33, 35. Not coincidentally, these messages were sent to the victim at the same time that he constantly lamented the demise of their relationship, always blaming their breakup on the victim's infidelity. *See id*., at 26-29, 35. Moreover, the victim testified that eventually she received similar messages from a number which she recognized as one of Cwienk's cellphone numbers, signed by either "Sincerely, Ted Cwienk, III" or "With Love, Ted Cwienk, III." *See id*., at 56-59. Therefore, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to allow the fact-finder to conclude that Cwienk was the person communicating with the victim. Cwienk's first issue on appeal merits no relief.

In his last two issues, Cwienk argues that the trial court erroneously admitted evidence offered by the Commonwealth. However, our review of the certified record reveals that not only did Cwienk not object to the admission of this evidence, he actually stipulated to its admissibility, reserving only his right to contest how the jury should weigh the stipulated evidence.

On the first day of trial, February 27, 2018, the Commonwealth was represented by Assistant District Attorney Nicholas Beeson and Cwienk by Attorney Laurence A. Narcist, III. Prior to the jury entering the courtroom, the following colloquy took place:

> MR. BEESON: Good morning, Judge. Nick Beeson on behalf of the Commonwealth.

This is the matter of the Commonwealth v. Cwienk, docketed at 9136 of 2016. At this point, this is still going to be a jury trial, Your Honor. Pretrial negotiations have failed to this point, and the defendant would like to proceed to a jury trial.

There are three pretrial matters that I believe we need to discuss. There's a 404(b) motion that was filed by my office, a Rule 600 motion which was filed by the defense, and then also we have stipulations for you to consider about the evidence in this case.

THE COURT: Okay.

MR. BEESON: Initially, Your Honor, the stipulation that we've agreed to -- defense can correct me if any of this is incorrect. There are essentially three batches of evidence that the Commonwealth is going to put forward. It involves text messages, it involves call detail records, and it involves screen shots from the Credit Karma website, as well as the T-Mobile website.

My understanding is that the defense is not objecting to the admissibility of any of those, which will be contained in a PowerPoint.

MR. NARCISI: Shall we do --

THE COURT: Yes.

MR. NARCISI: That is correct, Your Honor. *There is no issue as far as the admissibility. Obviously, weight will be left up to the fact finder.*

THE COURT: Okay.

MR. BEESON: Regarding the 404(b) motion, Your Honor, we have an agreement that [the] parties will be permitted to discuss the relationship between the victim and the defendant, roughly between June of 2016 up until the incident date. That will obviate the need to litigate the 404(b) motion, because both parties will be happy with what they're able to address.

- 6 -

THE COURT: Just so we're clear. The Commonwealth will be permitted to introduce any – for lack of a better word -- prior bad acts from June 2016 - to the time of the incidents in question. Is that accurate?

MR. NARCISI: Except for the characterization, Your Honor. Whatever course of conduct there was. Obviously, prior bad acts would be for the purposes of [establishing] -- for context, Judge, to essentially give the jury a fairer understanding of the circumstances leading up to these incidents.

THE COURT: Okay.

N.T., Jury Trial, 2/27/18, at 1-2. Therefore, there was a clear stipulation to the admissibility of the evidence of which Cwienk now complains.

Furthermore, when April Cwienk was on the witness stand, there were no objections to any testimony that could be even remotely considered "bad acts" evidence. N.T., Jury Trial, 2/28/18, at 21-30. Finally, on February 28, 2018, after the Commonwealth had completed its direct examination of April Cwienk, and the Commonwealth moved its exhibits into the record, the following exchange occurred:

MR. BEESON: Your Honor, as I proceed forward with my direct, I have Exhibits 1 through 50 of the Commonwealth, that we stipulated to pretrial. I'd like to move them into evidence. They are marked.

THE COURT: Any objection, Mr. Narcisi?

MR. NARCISI: No objection.

THE COURT: Ladies and gentlemen, by stipulation, what you are to understand from that *is* that the defense has agreed to the admissibility of these exhibits, so that we need not go through moving for admission and determining

admissibility. They've stipulated to them. So they are admissible in evidence.

*Id*. at 30-31.

Upon review, we find that Cwienk's last two issues have been waived because he not only failed to raise a timely objection at trial, but actually stipulated to the admissibility of this evidence. "The absence of a contemporaneous objection below constitutes a waiver of the claim on appeal." **Commonwealth v. Rodriguez**, 174 A.3d 1130, 1145 (Pa. Super. 2017). Our Supreme Court has stated:

> [I]t is axiomatic that issues are preserved when objections are made timely to the error or offense. **See Commonwealth v. May**, [ ] 584 Pa. 640, 887 A.2d 750, 761 ([Pa.] 2005) (holding that an "absence of contemporaneous objections renders" an appellant's claim waived); and **Commonwealth v. Bruce**, [ ] 207 Pa.Super. 4, 916 A.2d 657, 671 ([Pa. Super.] 2007), *appeal denied*, [ ] 593 Pa. 754, 932 A.2d 74 ([Pa.] 2007) (holding that a "failure to offer a timely and specific objection results in waiver of" the claim). Therefore, we shall consider any issue waived where Appellant failed to assert a timely objection.

**Commonwealth v. Baumhammers**, 960 A.2d 59, 73 (Pa. 2008).

Similarly, this Court has stated:

> Our Pennsylvania Rules of Appellate Procedure and our case law provide the well-established requirements for preserving a claim for appellate review. It is axiomatic that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "The absence of a contemporaneous objection below constitutes a waiver" of the claim on appeal. **Commonwealth v. Powell**, [ ] 598 Pa. 224, 956 A.2d 406, 423 ([Pa.] 2008); **Tindall v. Friedman**, 970 A.2d 1159, 1174 (Pa. Super. 2009) ("On appeal, we will

- 8 -

not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated.") (citation omitted)).

***Commonwealth v. Smith***, 213 A.3d 307, 309 (Pa. Super. 2019) ***quoting***

***Rodriguez***, 174 A.3d at 1144–45. We further note that where an appellant includes an issue in his Pa.R.A.P. 1925(b) statement, such inclusion does not "resurrect" a waived claim. ***Id.*** at 1145 n.6 (citing ***Steiner v. Markel***, 600 Pa. 515, 968 A.2d 1253 (2009)).

In order to avoid the consequences of waiver, Cwienk contends that the Supreme Court's decision in ***Commonwealth v. Eichinger***, 108 A.3d 821 (Pa. 2014) requires us to review these two issues. In ***Eichinger***, in the context of post collateral relief proceedings, the Supreme Court held that if a defendant enters into a stipulation of evidence which virtually assures his conviction, the stipulation must be accompanied by a colloquy evidencing that the defendant made a knowing and voluntary decision. ***See id***., at 832. This is because such a stipulation is functionally the same as a guilty plea. ***See id***.

Here, Cwienk argues that the stipulated exhibits and the bad acts evidence essentially assured his conviction, and as such, the trial court should have conducted a colloquy to make sure that he understood the ramifications of this evidence coming before the jury. "There is nothing on the record to indicate that Mr. Cwienk knew or understood what Mr. Narcisi[] had done and the consequences of the same." Brief for Appellant, at 24.

Initially, we note that both **Eichinger** and the earlier decision upon which it was based, **Commonwealth v. Davis**, 322 A.2d 103 (Pa. 1974), were post-conviction relief cases. Therefore, there is a serious challenge as to whether this argument is properly before the Court at this time. On its face, this could be considered a claim of ineffective assistance of counsel, which must be deferred until collateral review. **See Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013).

However, instantly, the stipulations entered on behalf of Cwienk were made on the record in his presence. Cwienk was also present during the direct examination of April Cwienk, and was present when counsel raised no objection to the admission of the exhibits at the conclusion of April Cwienk's direct examination. An inference must be drawn that Cwienk's silence during these stages of the trial demonstrated his acquiescence in trial counsel's strategy.

Moreover, the stipulations were to *admissibility* only; Cwienk's trial counsel vigorously contested the relevance and weight of this evidence before the jury. Counsel strenuously argued to the jury that Cwienk was not the one who sent the troubling text messages or placed the cell calls. **See** N.T., Jury Trial, 3/1/18, at 10-14. Great efforts were made on Cwienk's behalf to convince the jury that someone other than Cwienk was the culprit behind the harassing test messages and calls.

By no means did the stipulations virtually assure his conviction. The verdict in this case rested upon the jury's determination of credibility after hearing vastly different versions of the underlying facts. Therefore, we find *Eichinger* to be inapposite to the proceedings in this case.

Finding no error in the trial court's handling of this case, we affirm. On a final note, we commend the trial court for a well-written and comprehensive opinion filed in accordance with Pa.R.A.P. 1925(a) on November 15, 2018.

Judgment of Sentence affirmed.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/19

- 11 -